UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---------------------------------------------------x
THE MOORE FAMILY TRUST, and
SCOTT M. MOORE, Trustee

Plaintiffs, Case No.:

v. **COMPLAINT**

MICHAEL WILLIAM BINGHAM,
PETER EDWARD BINGHAM,
WILLIAM DAVID BINGHAM,

Defendants.
---------------------------------------------------x

Plaintiffs, THE MOORE FAMILY TRUST, and SCOTT M. MOORE, Trustee, as and for their Complaint, allege as follows:

## NATURE OF THE ACTION

1) This is a lawsuit for money damages and injunctive relief brought by Plaintiffs, THE MOORE FAMILY TRUST, by and through its Trustee, SCOTT M. MOORE, against the Defendants, jointly and severally, for claims of common law property trespass and nuisance relating to real property owned by THE MOORE FAMILY TRUST in the Keweenaw Peninsula, the northernmost area of Michigan's scenic Upper Peninsula.

## THE PARTIES

2) Plaintiff, THE MOORE FAMILY TRUST, ("the TRUST"), is a trust organized under the laws of New York, with its domicile and principal office located in Somers, New York. The TRUST owns the subservient property which is the subject of this action.

3) Plaintiff, SCOTT M. MOORE, brings this action on behalf of and as Trustee of the TRUST, ("the TRUSTEE"), and is domiciled and resides in Somers, New York.

4) Defendant, MICHAEL WILLIAM BINGHAM, is an owner of a certain lake front parcel of land East of and adjacent to the TRUST property and uses and maintains an access road across an easement burdening the TRUST property. Defendant, MICHAEL BINGHAM, resides at and is domiciled in Katy, Texas. At all relevant times, Defendant, MICHAEL BINGHAM, did personally and through his agents and invitees, cause the trespass, damage, and nuisance complained of herein.

5) Defendant, PETER EDWARD BINGHAM, is an owner of a certain parcel of lake front property situated to the East of the TRUST property, and uses and maintains an access road across an easement burdening the TRUST property. Defendant, PETER BINGHAM resides at and is domiciled at said parcel in Keweenaw County, Michigan. At all relevant times, Defendant, PETER BINGHAM, did personally and through his agents and invitees, cause the trespass, damage, and nuisance complained of herein.

6) Defendant, WILLIAM DAVID BINGHAM, is an owner of a certain non-lake front parcel of land to the East of and adjacent to the TRUST property, and uses and maintains an access road across an easement burdening the TRUST property. Defendant, WILLIAM BINGHAM resides at and is domiciled in Estero, Florida. At all relevant times, Defendant, WILLIAM BINGHAM, did personally and through his agents and invitees, cause the trespass, damage, and nuisance complained of herein.

7) The aforesaid Defendants are brothers. (collectively "the DEFENDANTS")

**<u>JURISDICTION AND VENUE</u>**

8) This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

9) Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2).

**STATEMENT OF FACTS**

10) The TRUST owns certain old growth forested lake shore property situated in Government Lot 4, Section 4, T57N, R30W, Eagle Harbor Township, Keweenaw County, Michigan. ("the TRUST property") The TRUST property is a servient estate burdened by a twelve foot wide access easement running roughly East-West across TRUST property.

11) At all relevant times, all the land which is the subject of this Complaint was and is zoned Residential by Eagle River Township. Gratiot Lake is a 1,438 acre lake, the largest in Keweenaw County, and is lightly residentially developed, with significant conservancy held lands protecting Gratiot Lake and its unique watershed.

12) The easement at issue was created by deed dated November 11, 1980, in which a single parcel of land, and a road easement for access, was sold and transferred from Bernard and Dolly Eister to William E. and Greta Bingham, annexed hereto as Exhibit A. ("the Deed")

13) The Deed language creating and describing the easement, states:

> Together with *an easement for access to said property* which access road easement is described as follows:
>
> A strip of land Twelve (12) feet in width over and across a part of Gov't . Lot Four {4), Section Four (4), Township Fifty-seven (57) North , Range Thirty (30) West, Eagle Harbor Township, Keweenaw County, Michigan having the following described centerline: …
> [emphasis added] ("the easement")

14) The most recent survey of the TRUST property and easement boundary, dated June 29, 2018, is annexed hereto as Exhibit B. ("the 2018 Survey")

15) The original parties to the Deed are now deceased. Today, Bernard and Dolly Eister's land, once part of larger tract and dating back in family ownership to the 1870s during the historic copper mining days of the Copper Country, is now owned by the TRUST. The single

parcel sold to William E. and Greta Bingham in the Deed has since been subdivided into a number of parcels and is presently owned by the DEFENDANTS and other children of William E. and Greta Bingham.

16) At the time of the Deed, the William E. and Greta Bingham parcel and the land over which the easement runs was fully forested and contained old growth hardwood Maple, Oak and other trees and shrubs, and was unimproved. At all relevant times, there was also a public access boat launch at Gratiot Lake for water access.

17) Between 1980 and 1985, William E. and Greta Bingham, by and through their family, agents and invitees, began cutting trees, clearing bush, and running a dirt road the length and width of the easement, and began clear-cutting and developing their parcel.

18) Beginning on or about 1990, William E. and Greta Bingham began an extensive process of broad clear-cutting trees and brush, bulldozing, excavating, and filling and leveling their lakefront parcel, which included wetlands and foothills of a nearby mountain range. During this period, the Michigan Department of Natural Resources had repeated contact with William E. and Greta Bingham relating to their lack of state wetland permits. During this period, the TRUSTEE complained to a logger used by William E. and Greta Bingham that the logger was trespassing and cutting brush and trees and leaving piles of cut branches over the East property line.

19) On or about 1995, TRUSTEE sent a protest letter to William E. and Greta Bingham objecting to use of the easement by speeding cars, trucks, and construction vehicles, and of the noise, dust, and stones scattered off the easement. In response, William E. and Greta Bingham's attorney sent a letter to TRUSTEE suggesting that the parties have a sit down to resolve the concerns. William E. and Greta Bingham never followed-up in furtherance of their

attorney's letter, and the said easement problems continued unabated. TRUSTEE at that time put up two signs on a tree on TRUST Property at the entrance to the Easement, one saying "slow" and one saying "private," which were ignored.

20) On or about August 15, 1995, a survey was conducted of the TRUST property and easement, with survey stakes placed along the property and easement lines. ( "the 1995 Survey")

21) On or about the summer of 2001, TRUSTEE discovered all the survey stakes from the 1995 Survey along the East property line and along the easement had been removed, except for one: one iron marker marking a point near the Gratiot Lake water's edge. TRUSTEE also noticed a gradual widening of the access road running over the easement which was trespassing and damaging TRUST Property. The area widened was beginning an arc at the entrance and exit of the easement, and along the entire length of the North side of the easement, and along a part of the South side of the easement boundary closest to the easement entrance. TRUSTEE protested by putting tree stumps along the easement boundaries.

22) On or about the summer of 2002, TRUSTEE discovered all the aforesaid tree stumps placed along the easement had been removed and disappeared, and TRUSTEE again placed tree stumps to mark the easement. Each subsequent summer the pattern of placement of stumps and the discovery of their removal, continued until the 2018 survey re-staked the TRUST property and the easement lines.

23) About 2008, TRUSTEE discovered an old growth Maple tree had been cut down, and the stump removed, on Trust Property at the East exit area of the easement which widened the arc. After protest, Defendant, MICHAEL BINGHAM, paid approximately $1,000 for said trespass and damage.

24) Also about 2008, TRUSTEE noticed that Defendant, WILLIAM BINGHAM, began erecting two pole barns and keeping commercial grade construction and earth moving equipment such as tractors, bulldozers, and CAT brand back hoes and digging equipment, which are loud and beep when in reverse when operating. (" the commercial equipment") The commercial equipment appeared to be a part of a commercial enterprise operated by Defendant, WILLIAM BINGHAM. The trespassing and damaged area of the widening access road and arcs at the entrance and exit of the easement appeared to be for the purpose of accommodating the size and turning radius of the commercial equipment and transport trailers.

25) About 2012, Defendant, WILLIAM BINGHAM, caused a raised gravel driveway to be installed leading to his pole barns. This gravel driveway in part was over the property line and trespassed on TRUST property, and caused mountain Spring snow melt runoff to be deflected on TRUST property. TRUSTEE first attempted a protest to Defendant, WILLIAM BINGHAM, by phone, but there was no answer and no message capability. TRUSTEE then protested by letter to Defendant, WILLIAM BINGHAM, and in that letter, TRUSTEE invited Defendant, WILLIAM BINGHAM, to call or email to discuss the problems, and included his cell phone and email address. In response, Defendant, WILLIAM BINGHAM, corrected the gravel driveway trespass, but not the runoff deflection, and did not call or correspond.

26) On or about 2014, Defendant, MICHAEL BINGHAM, caused flags to be placed trespassing on TRUST property during his planning for construction of a pole barn on his parcel. TRUSTEE placed a telephone call to Defendant, MICHAEL BINGHAM, and left a voice message asking that the trespassing flags be removed, and invited him to return the call and left his cell phone number. In response, Defendant, MICHAEL BINGHAM, removed the flags from

TRUSTEE Property, and constructed his pole barn away from the property line, but did not return the call.

27) In June, 2018, the 2018 Survey was conducted with new metal survey stakes and posts installed by the surveyor along the TRUST property and easement lines. “No Trespassing” and “Reforestation” signs were attached to the survey posts on TRUST property along the East TRUST boundary, along the easement and at the entrance and exit of the easement. These signs indicated that TRUST property was in a process of being reforested on areas trespassed and damaged beyond the easement boundaries. At this time, while the surveyor was working in the performance of his duties, Defendant, MICHAEL BINGHAM, came out of his house, approached and interfered with TRUSTEE’s female helper who was installing the signs, at which time Defendant, MICHAEL BINGHAM used expletives to describe enforcement of the easement boundary.

28) On or about the morning of Sunday, July 15, 2018, TRUSTEE found five survey posts and signs removed from TRUST property, damaged, and thrown in a pile on the ground, which had been installed along the easement boundary by the surveyor. The open holes were visible where the posts had been removed.

29) On or about Monday, July 16, 2018, TRUSTEE found three of the survey post holes had been filled and graded so three of the holes could not be found.

30) On or about Tuesday, July 17, 2018, the DEFENDANTS stopped and gathered as a group when they saw TRUSTEE attaching orange flags to No Trespassing signs in the area of the easement entrance. Defendant, WILLIAM BINGHIAM, admitted to TRUSTEE the easement was twelve feet wide, and complained about the location and size of the easement. Defendant, MICHAEL BINGHAM used expletives to describe enforcement of the easement boundary.

31) On just one day, on or about Wednesday, August 8, 2018, the TRUST's newly installed cameras located on TRUST property took pictures of the following vehicles traveling back and forth along and off the easement area, trespassing 36 times, between 8:35 am and 11:42 pm, with unrestrained speed, noise, and kicking dirt and stones off the easement, at the below noted times:

a) 8:35 am: 4 axle dump truck, enter

b) 8:43 am: 4 axle dump truck, exit

c) 8:49 am: White construction van with a ladder, enter

d) 10:03 am: Enclosed 4 wheel ATV, with flat bed, enter

e) 10:13 am: Silver Jeep, exit

f) 11:20 am: White truck, enter

g) 11:32 am: UPS truck, enter

h) 11:37 am: USP truck, exit

i) 11:48 am: Black SUV, enter

j) 12:02 pm: Enclosed 4 wheel ATV, with flat bed, exit

k) 12:08 pm: Enclosed 4 wheel ATV, with flat bed, enter

l) 12:30 pm: White construction truck, exit

m) 12:58 pm: Enclosed 4 wheel ATV, with flat bed, exit

n) 12:59 pm: Enclosed 4 wheel ATV, with flat bed, exit

o) 1:02 pm: Black SUV, exit

p) 1:08 pm: Silver Jeep, enter

q) 2:48 pm: Silver Jeep, exit

r) 2:51 pm: Enclosed 4 wheel ATV, with flat bed, enter

s) 2:52 pm: Enclosed 4 wheel ATV, with flat bed, enter

t) 3:03 pm: Open 4 wheel ATV, exit

u) 3:57 pm: White construction van, with ladder, exit

v) 4:02 pm: Open 4 wheel ATV, enter

w) 4:41 pm: 4 door Silver sedan, enter

x) 4:46 pm: Silver Jeep, enter

y) 4:48 pm: 4 door Silver sedan, exit

z) 5:56 pm: 4 door truck with flat bed, and boat and trailer, enter

aa) 6:08 pm: 4 door truck with flat bed, and boat and trailer, exit

bb) 6:26 pm: 4 door truck with flat bed, and boat and trailer, enter

cc) 6:33 pm: 4 door truck with flat bed, exit

dd) 6:39 pm: Enclosed 4 wheel ATV, exit

ee) 8:17 pm: Red SUV, exit

ff) 9:00 pm (night): Enclosed 4 wheel ATV, with flat bed, exit

gg) 9:30 pm (night): SUV, enter

hh) 9:56 pm (night): SUV, exit

ii) 11:42 pm (night): SUV, enter

jj) 11:42 pm (night): Enclosed 4 wheel ATV, with flat bed, enter

32) On or about August 22, 2018, two of the TRUST's survey posts placed by the surveyor along the easement and near the exit area, with no trespassing signs, were stolen from TRUST Property. On said date, at 4:44 pm, a TRUST camera took pictures of Defendant, PETER BINGHAM, and his wife, Donna Bingham. Defendant, PETER BINGHAM, was smiling and taking pictures of his wife carrying a TRUST survey post on the easement.

33) On or about September 24 and 25, 2018, Trust Property on the North side of and along the entire length of the easement was damaged by a ditch being dug and gravel brought in and spread, extending the access road beyond the easement boundary to approximately 26 feet. On said dates, a TRUST camera took pictures of a CAT Bobcat excavator and tractor damaging TRUST Property operated by one of the DEFENDANTs wearing an orange "TEXAS" sweatshirt, of the same type stored in the pole barns of DEFENDANT, WILLIAM BINGHAM.

34) On or about November 8, 2018, the TRUST's surveyor returned and replaced the stolen and moved surveyor posts marking the easement boundaries. The surveyor's delay in returning to re-stake was due to fear for his safety, remarking "It's one thing to be right. It's another thing to be dead right." While the surveyor's assistant was working at the entrance area of the easement, Defendant, PETER BINGHAM, stopped and parked his vehicle, trespassing off the marked easement, got out of his vehicle, and interfered with the surveyor by approaching and stating to the surveyor that the surveyor was interfering with Defendant, PETER BINGHAM's access. The surveyor responded by telling Defendant, PETER BINGHAM, that removing survey stakes was against the law.

35) The DEFENDANTS' actions of trespass, damage, and nuisance are defiant and continuing, all to the detriment of the TRUST.

## CAUSES OF ACTION

### I.
### *(Common Law Trespass)*

36) PLAINTIFFS repeat the previous paragraphs as if fully and completely restated herein.

37) The DEFENDANTS have and continue to physically invade TRUST land causing the TRUST to be dispossessed of a portion of its domain, to Wit: that portion of TRUST land dispossessed beyond the 12' wide easement.

38) The DEFENDANTS have physically invaded TRUST land and caused the physical destruction of property, to Wit: the physical destruction of trees, shrubs, vegetation, ground, and natural flora and fawn and natural habitat beyond the 12' wide easement.

39) The DEFENDANTS have materially increased the kind and quantity of vehicular use of the easement, materially increasing the burden on the TRUST subservient property.

40) The continuing and repeated invasions and destruction of TRUST land by the DEFENDANTS is intentional, egregious, and done with reckless disregard for TRUST property rights and safety.

**II.**
**(*Common Law Nuisance*)**

41) PLAINTIFFS repeat the previous paragraphs as if fully and completely restated herein.

42) The DEFENDANTS did and continue to conduct an activity on their own property and on the easement, to Wit: keep and operate commercial construction vehicles and other vehicles, at all hours of the day and night, with unrestrained speed, noise, and kicking dirt and stones off the easement, which activity over a substantial length of time and on successive and repeated occasions has and continues to cause significant and substantial interference with the person, property, health, safety, and comfort on TRUST property.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for the following relief:

**As to Count I:**

1) An award of damages to be determined in excess of $75,000:
    a. Compensatory damages,
    b. Special damages,
    c. Punitive damages, including but not limited to, $1,000 per trespass occurrence, plus $1,000 per square foot of land dispossessed.
    d. Pre-judgment interest,
    e. Post-judgment interest,
    f. Attorney fees and costs,
    g. Court costs,
    h. Any other and further damages the Court deems fair and equitable.
2) Permanent Injunctive relief to enjoin the Defendants from further trespass, or in the alternative, extinguishment of the easement.

**As to Count II:**

1) An award of damages to be determined in excess of $75,000:
    a. Compensatory damages,
    b. Special damages,
    c. Punitive damages,
    d. Pre-judgment interest,
    e. Post-judgment interest,
    f. Attorney fees and costs,

g. Court costs,

h. Any other and further damages the Court deems fair and equitable.

2) Permanent Injunctive relief that the nuisance be abated and removed.

Dated: June 20, 2019

/s/ Scott M. Moore

By: ______________________________

The Moore Family Trust,
Scott Michael Moore, Trustee
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
T. (212) 332-3474
F. (212) 332-3475
E. smm@milopc.com